UNITED STATES of America,
Plaintiff–Appellee,

v.

Larry Daniel HARRIS, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael Eugene STEWARD,
Defendant–Appellant.

Nos. 96–10416, 96–10418.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 12, 1998.*

Decided Sept. 9, 1998.

Margaret A. McKnight, Fresno, CA, for appellant Michael Eugene Steward.

Katherine Hart and Steven Crawford, Fresno, CA, for appellant Larry Harris.

William L. Shipley, Assistant United States Attorney, Fresno, CA, for appellee.

---

* The panel finds this case appropriate for submission without argument pursuant to Fed. R.App. P. 34(a) and 9th Cir. R. 34–4.

Before: SCHROEDER, WIGGINS, and NOONAN, Circuit Judges.

WIGGINS, Circuit Judge:

Larry Harris and Michael Eugene Steward were each convicted of multiple counts of robbery and use of a firearm in a crime of violence. They appeal their convictions and sentences on numerous·grounds. We affirm their convictions in a separate, unpublished memorandum disposition. To be discussed here are their sentences. Harris was sentenced to 1141 months (95 years) and Steward to 597 months (49.75 years). Harris and Steward argue that these sentences constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. They also argue that the district court should have reduced their sentences under the Sentencing Guidelines' downward departures for mitigating circumstances. The district court held that it did not possess the discretion to do so.

We reluctantly find that we must affirm Harris' and Steward's sentences given the precedents established by our court and by the Supreme Court. We publish this opinion to urge Congress to reconsider its scheme of mandatory consecutive minimum sentences and to grant district court judges the discretion to set sentences at the level appropriate for the circumstances of a particular defendant and his or her crimes.

## I.

A string of armed robberies occurred in 1994 in restaurants and hotels in and around Fresno, California, where Harris and Steward were on football scholarships at Fresno State University for the 1993–1994 school year. After a jury trial, Harris and Steward were each convicted on all charged counts.

Harris was found guilty of five counts of interference with interstate commerce by robbery under 18 U.S.C. § 1951(a). He was also convicted of five counts of use of a firearm when committing a crime of violence under 18 U.S.C. § 924(c)(1). The district court sentenced him on November 5, 1996, to a total of 1141 months in prison.

The district court sentenced Harris to the statutory minimum for each crime: 121 months for each of the five counts of interference by robbery (to be served concurrently),

60 months on the first count of use of a firearm and 240 months for each of the other four counts of use of a firearm (to be served consecutively as required by § 924(c)(1)). The total, 1141 months, means 95 years in prison for Harris without the possibility of parole.

Steward was found guilty of three counts of interference with interstate commerce by robbery under 18 U.S.C. § 1951(a), and three counts of aiding and abetting the use of a firearm during the commission of a crime of violence under 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2. He was sentenced to a total of 597 months in prison.

The sentence again represents the mandatory statutory minimum for each crime committed: 57 months for each count of robbery (to be served concurrently), and 60 months on the first count and 250 months on each of the other two counts of aiding and abetting the use of a firearm (to be served consecutively).

Harris and Steward requested the district court to reduce their sentences under the Sentencing Guidelines' downward departures for mitigating circumstances. Noting that all the sentences, including the hefty consecutive terms for use of a firearm, were mandated by Congress, the court concluded that it did not have the discretion to consider the Sentencing Guidelines' downward departures. The district court expressed frustration at its lack of discretion by stating that, if it had had the discretion, it would have sentenced Harris to 437 months (36.4 years) and Steward to 357 months (29.75 years). The court would have departed downward based on the youth of Defendants, their insignificant prior criminal records, and their productive lives as college students. The district court felt that the lower sentences would "constitute fitting punishment," deter others from committing similar crimes, and provide rehabilitation opportunities for Defendants.

## II.

■ Harris and Steward argue that their sentences are in violation of the Eighth Amendment to the Constitution because they are disproportionate to their crimes. We

review de novo the legality of a district court's sentence under the Eighth Amendment. *See United States v. Bland,* 961 F.2d 123, 128 (9th Cir.1992).

Our court follows the narrow proportionality rule established by Justice Kennedy's concurrence in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a case without a majority position. *See Bland,* 961 F.2d at 128–29. Under this rule, the "Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring) (quoting *Solem v. Helm,* 463 U.S. 277, 288, 303, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)). Comparative analyses of sentences for other crimes is only appropriate "in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005, 111 S.Ct. 2680.

We are unable to say that, as a threshold matter, the robberies committed by Harris and Steward and the sentences imposed for each crime are grossly disproportionate. Armed robberies are extremely dangerous crimes. The robberies at issue in this case were undeniably violent; employees and bystanders were threatened and occasionally harmed. We may not, therefore, compare the sentences received by Defendants to sentences received by other defendants for other crimes.

Significantly, Congress mandated each Defendant's sentence. In particular, the major part of each Defendant's total sentence resulted from his conviction of multiple counts of use of a firearm during the commission of a crime. 18 U.S.C. § 924(c)(1) mandates a consecutive twenty year sentence without the possibility of parole for every conviction for use of a firearm after an initial violation of the statute. The judicial branch of our federal government gives substantial deference to the legislative branch to assess appropriate penalties for crimes. *See Harmelin,* 501 U.S. at 998–99, 111 S.Ct. 2680. " '[A] sentence which is within the limits set by a valid statute may not be overturned on appeal as cruel and unusual.' " *See United States v. Klein,* 860 F.2d 1489, 1495 (9th Cir.1988) (quoting *United States v. Washington,* 578 F.2d 256, 258 (9th Cir.1978)). We have previously upheld mandatory minimum sentences under § 924(c)(1). *See United States v. Wilkins,* 911 F.2d 337, 339 (9th Cir.1990) (holding constitutional the mandatory sentence scheme of § 924(c)(1) despite its removal of sentencing discretion from the courts); *United States v. Fontanilla,* 849 F.2d 1257, 1258–59 (9th Cir.1988) (upholding multiple consecutive sentences under § 924(c)(1)). Moreover, the Supreme Court has recognized the legitimacy of a legislature's interest in treating repeat offenses more severely than first offenses. *See Rummel v. Estelle,* 445 U.S. 263, 276, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (noting the "valid interest" of a state in "dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law").

Thus, we cannot find that Defendants' sentences were grossly disproportionate to their crimes. Their sentences do not violate the Eighth Amendment. *See Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring).

### III.

Harris and Steward argue that the district court had the discretion to depart downward from their sentences based on the mitigating factors of their youth, lack of criminal history, short period of criminal activity, educational pursuits, and the disproportionality of their sentences compared to those received by co-defendants in the case. Defendants, however, were sentenced to the statutory minimum for each count of conviction. The district court does not have the discretion to consider mitigating factors and cannot apply the downward departures of the Sentencing Guidelines to reduce a sentence below the minimum mandated by Congress. *See* U.S. Sentencing Guidelines § 5G1.1 (the sentence imposed on a count of conviction may not be lower than the statutory minimum for that count); *United States v. Sharp,* 883 F.2d 829, 831 (9th Cir.1989).

The district court did not have the discretion to depart downward from the statutory minima for Defendants' crimes.

## IV.

As a federal court of appeals bound to follow precedent, we find that we are unable to alter what are essentially life sentences for Defendants. Congress mandated their sentences. We recognize the threat to society represented by armed robberies. We also recognize the need to deal harshly with repeat offenders. We do not, however, believe that the identification of a defendant as a repeat offender should complete the analysis of the appropriate sentence for that defendant. By mandating such high minimum sentences in 18 U.S.C. § 924(c)(1), Congress has removed the carefully circumscribed discretion granted to district courts in the Sentencing Guidelines to consider possible mitigating circumstances. We feel a just system of punishment demands that some level of discretion be vested in sentencing judges to consider mitigating circumstances. *See, e.g.,* Karen Lutjen, Note, *Culpability and Sentencing Under Mandatory Minimums and the Federal Sentencing Guidelines: The Punishment No Longer Fits the Criminal,* 10 Notre Dame J.L. Ethics & Pub. Pol'y 389, 389 (1996) ("If [the proportional] link between culpability and the punishment imposed is severed, then the foundations upon which the criminal justice system are based are rendered morally suspect."); Henry Scott Wallace, *Mandatory Minimums and the Betrayal of Sentencing Reform: A Legislative Dr. Jekyll and Mr. Hyde,* 40 Fed. B. News & J. 158, 159 (1993) (noting the failings of mandatory minimum schemes and questioning their "election-eve" wisdom). We urge Congress to reconsider its harsh scheme of mandatory minimum sentences without the possibility for parole.

We do not believe that Harris needs to be in prison when he is 100, or Steward when he is 70, without the possibility for reconsideration of their sentences. The district court judge stated that, given the discretion, he would have sentenced Harris to 36.4 years and Steward to 29.75 years. Although, as already noted, we cannot say that Defendants' sentences are "grossly disproportionate" to their crimes, we feel these lower sentences would have appropriately punished them, would have deterred others, and would have left Defendants with the possibility of rehabilitation, a possibility denied by their current sentences. Harris' sentence, and possibly Steward's as well, constitutes a life sentence. Thus, he "will never regain his freedom. Because such a sentence does not even purport to serve a rehabilitative function, the sentence must rest on a rational determination that the punished 'criminal conduct is so atrocious that society's interest in deterrence and retribution wholly outweighs any considerations of reform or rehabilitation of the perpetrator.'" *Harmelin,* 501 U.S. at 1028, 111 S.Ct. 2680 (Stevens, J., dissenting). We cannot in good conscience say that Defendants' crimes rise to that level.

We urge Congress to reconsider mandatory minimum sentences. Given the political expediency of such sentencing schemes and the resulting improbability of their repeal, we likewise urge the President to examine overlong sentences such as these. The President should scrutinize cases in which the inmate has already been incarcerated for many years and consider clemency after an appropriate length of time in worthy cases. In such cases, the public interest will be well served by the release of the defendant.

## V.

For the foregoing reasons, Harris' and Steward's sentences are

AFFIRMED.

NOONAN, Circuit Judge, concurring:

Proportionality between crime and sentence is difficult to lay out abstractly. To achieve it is a matter of judgment—the judgment of the sentencing judge. To eliminate proportionality is to eliminate the virtue of prudence which should guide every act of judgment. To eliminate proportionality is to leave the way wide open to the cruel and unusual punishments that our Constitution proscribes.

In the present climate, Congress's attempt to control crime by escalating the punishments has gone very far in the direction of eliminating the prudential, proportionate

judgment of the sentencing judge. The effect has been magnified by the deference accorded the legislature by the decisions of the Supreme Court. In the present case, if I were free to do so, I would respect the judgment of the judge who tried the case, learned of the crimes in detail, saw the defendants, and reached a judgment as to what sentence was proportionate to their offenses.